**IN THE COURT OF APPEALS OF IOWA**

No. 21-1443
Filed February 16, 2022

**IN THE INTEREST OF K.T.,**
**Minor Child,**

**J.T., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Calhoun County, Joseph B. McCarville, District Associate Judge.

A mother appeals juvenile court orders adjudicating her child in need of assistance and removing the child from her home at the time of adjudication and disposition. **AFFIRMED.**

Mark J. Rasmussen of Rasmussen Law Office, Jefferson, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A Triick, Assistant Attorney General, for appellee State.

Christine Sand of Wild, Baxter & Sand, PC, Guthrie Center, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals juvenile court orders adjudicating her child in need of assistance and removing the child from her home at the time of adjudication and disposition. She contends the State failed to prove the grounds for adjudication cited by the juvenile court and "failed to establish the elements for the removal of the child."

The child, born in 2011, was the subject of a district court custody decree granting the parents joint legal custody and the mother physical care, subject to visits with the father. In the spring of 2021, the father sought to modify the decree to afford him sole legal custody and physical care of the child. Shortly thereafter, the State filed a child-in-need-of-assistance petition in juvenile court asserting the child was "being treated for anxiety" and had missed numerous days of the 2020-2021 school year, minimizing the effectiveness of her therapy with a school counselor. The district court stayed the father's modification action pending the outcome of the juvenile court action.

The father filed a motion in juvenile court for an order authorizing the district court "to exercise concurrent jurisdiction" over his modification action. *See* Iowa Code § 232.3(1), (2) (2021). The juvenile court did not immediately rule on the motion.

Shortly before the 2021-2022 school year was slated to begin, the mother asked the father to take the child "for a week or two weeks or until school starts" because she was having trouble controlling the child. The father agreed but soon expressed an intent to keep the child with him and transfer her to a different school.

At the adjudicatory hearing, the mother stated she was unwilling to have the child continue in the father's physical care. Counsel asserted, "She wants the [district court] custodial order to be followed at this stage and for the child to be returned to her care and custody." The juvenile court adjudicated the child in need of assistance, ordered the child removed from her mother, placed "temporary custody of [the child] . . . with her father under the protective supervision [of] the Iowa Department of Human Services," and deferred ruling on the father's motion for concurrent jurisdiction until a scheduled dispositional hearing. Following that hearing, the court granted the father's request to have the district court exercise concurrent jurisdiction. The court further determined "it would be contrary to the child's welfare to be returned to the mother's home at this time because the child would be without proper care and supervision." The court ordered "[c]ustody of the child . . . placed with the Iowa Department of Human Services for placement with an appropriate relative." This mother appealed.

## I.      *Grounds for Adjudication*

The juvenile court adjudicated the child under two statutory provisions. We will address both. *See In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014) (addressing contested and uncontested grounds for adjudication in light of post-adjudication implications).

Iowa Code section 232.2(6)(c)(2) defines a child in need of assistance as an unmarried child "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." "Although chapter 232 does not contain a definition of 'harmful effects,'" the supreme court has "noted it

'pertains to the physical, mental or social welfare of a child.'" *In re A.W.*, No. 20-1406, 2021 WL 2021646, at *2 (Iowa Ct. App. May 21, 2021) (per curiam) (quoting *J.S.*, 846 N.W.2d at 41). Our de novo review discloses the following facts.

The department of human services intervened "due to the [child's] underlying mental health concerns, not receiving adequate mental health services, concerns of suicide ideation." Specifically, the child exhibited signs of anxiety and depression. A department employee learned the child had poor school attendance and, as a result, was not "participating in . . . therapy because it was school-based therapy" and was not "being properly cared for in Mom's care." According to the employee, the mother contacted the father due to the child's "extreme behaviors" and the mother's difficulty "managing her."

The school-based therapist testified the child was to engage in weekly forty-five minute therapy sessions. The child missed thirty percent of her scheduled appointments. When the child was sick, the therapist offered "telehealth services; and those were declined at the time." The therapist opined, "For any child when they are missing a consecutive amount of appointments or a consistent amount of appointments, their therapy is going to be hindered in progress because it can't be frequent and regular." She stated ongoing therapy was "[a]bsolutely" important.

The school counselor testified she began having concerns about the child's attendance in the fall of the 2020-2021 school year. The counselor started meeting the mother "at the car to help transition [the child] to her classroom." The child was an in-person attendee rather than an online learner. She missed fifty-two days of school and was tardy on twenty-nine occasions. While the counselor acknowledged some of the absences could be attributed to a quarantine

requirement in the face of the COVID-19 pandemic, she testified that quarantined children could attend school online to avoid being counted absent.

Based on this record, we agree with the juvenile court that the child "suffered harmful effects as a result of the failure of the mother in this case to exercise a reasonable degree of care of supervising the child." We conclude the State proved the section 232.2(6)(c)(2) ground for adjudication.

We turn to the second ground for adjudication, Iowa Code section 232.2(6)(f). That provision defines a "[c]hild in need of assistance" as "an unmarried child" "[w]ho is in need of treatment to cure or alleviate serious mental illness or disorder, or emotional damage as evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others and whose parent, guardian, or custodian is unwilling to provide such treatment." Iowa Code § 232.2(6)(f).

The child was diagnosed with "specified anxiety disorder" and "other specified trauma and stressor related disorder." There was also a record of physical abuse by a non-parent. As discussed above, the child's anxiety affected her school attendance and her treatment regimen. We conclude the evidence supported adjudication under section 232.2(6)(f).

## II.    *Removal from Mother*

We are left with the juvenile court's decision to remove the child from the mother's care. Iowa Code section 232.96(10) authorizes removal following adjudication. It states:

> If the court enters an order adjudicating the child to be a child in need of assistance, the court, if it has not previously done so, may issue an order authorizing temporary removal of the child from the

child's home as set forth in section 232.95, subsection 2, paragraph "a", pending a final order of disposition. The order shall include both of the following:

> a. A determination that continuation of the child in the child's home would be contrary to the welfare of the child, and that reasonable efforts, as defined in section 232.102, have been made to prevent or eliminate the need for removal of the child from the child's home . . . .
>
> b. A statement informing the child's parent that the consequences of a permanent removal may include termination of the parent's rights with respect to the child.

Iowa Code § 232.96(10). The court made detailed findings to support removal under the provision. The findings were fully supported by the record.

At the dispositional hearing the court took additional evidence on the child's welfare and the question of ongoing removal. The department and guardian ad litem recommended maintaining the status quo pending the mother's receipt of services. The father described the child's progress in school and her regular participation in online therapy sessions. Based on the evidence, the juvenile court found the child's "anxiety ha[d] ebbed since the removal" and she was "doing much better socially and academically." The court further found, "[T]o place her back with her mother would put her at great risk of continued anxiety and continued under achievement in school." On our de novo review, we agree.

We affirm the juvenile court's adjudication and dispositional orders.

**AFFIRMED.**